J^CLAIBORNE, J.
This is an appeal by the succession representative of the plaintiff, Sharon Gay Hernandez, from a judgment in favor of the defendant, the State of Louisiana through the Commissioner of Insurance (the State), finding, after submission of evidence by stipulation of the parties, that she has stated no cause of action against the State and dismissing her claims against the State with prejudice.[2]
FACTUAL AND PROCEDURAL BACKGROUND
On November 7, 1985, Mid America Assurance Company of Louisiana (Mid America) issued a structured twenty-year annuity policy to Ms. Hernandez. The policy was a single premium annuity, meaning that it was purchased with a single premium of $80,969.54, and Ms. Hernandez began receiving her scheduled monthly pay *48 ments of $809.70 the next month. She continued to receive her monthly payments for about two and a half years. Then Mid America was put into liquidation, and all payments under the annuity ceased.
Ms. Hernandez filed suit against Mid America for payment of the annuity on November 8, 1988, and subsequently amended her petition to add the State as a defendant. Three other lawsuits were consolidated with this one; they were dismissed at the summary judgment stage. Ms. Hernandez died, and her succession representative was substituted as party plaintiff in the proceedings. The State filed a motion for summary judgment against the succession of Sharon Hernandez, which was denied on June 17, 1999, and the matter was then submitted to the trial court for decision on stipulations, documents, and briefs in March 2000. On February 4, 2002, the trial court 13issued written reasons for judgment, finding that Ms. Hernandez had failed to state a cause of action against the State and dismissing her claims against the State. A judgment to that effect was signed on February 15, 2002, and from that judgment, the succession of Sharon Gay Hernandez appeals.
LAW AND ANALYSIS
As recognized by the trial court, the threshold issue in this case is whether or not Ms. Hernandez purchased a registered or certificated annuity policy from Mid America. If the annuity was registered or certificated, then Mid America was required, pursuant to La. R.S. 22:1029, to place with the Commissioner of Insurance (the Commissioner) reserves sufficient to cover the annuity. Under the statute, once an insurer has shown the Commissioner proof that it has sufficient funds on deposit, the insurer may issue annuities which have on their face a certificate of deposit signed by the Commissioner stating the following:
STATE OF LOUISIANA.. .1, the undersigned Commissioner of Insurance of Louisiana, do hereby certify that the... Company invests and maintains in stipulated securities as required by the law of the State of Louisiana its fully paid up capital, together with the net cash value of every outstanding policy; and said company has on deposit with the commissioner of insurance of Louisiana such stipulated securities equal in amount to such net cash value of all outstanding policies as shown by its last annual statement, which fund the law requires the company to maintain during the continuance of this policy.
See La. R.S. 22:1029(B). According to Ms. Hernandez, the State of Louisiana, through the Commissioner, should be held liable under this statute, because it issued blank certificates of deposit to Mid America and did not follow up on their use or provide any safeguards to Mid America’s customers. In order to have a cause of action against the State, Ms. Hernandez must first establish that La. R.S. 22:1029 is applicable to her |4annuity policy by proving that her annuity was in fact a registered or certificated policy.
As noted by the trial court in its written reasons for judgment, Mid America kept sloppy and disorganized records, thereby making a rather simple factual question more difficult to determine. Ms. Hernandez’ application for annuity, dated November 6, 1985, makes no mention of whether the annuity was to be registered or not. The original policy she was issued, policy number 2433, does not state anywhere that it is a registered policy. It simply states on the policy schedule page that it is a “Single Premium Immediate Annuity.” Furthermore, policy number 2433 did not *49 have a certificate of deposit from the Commissioner of Insurance attached to it.
On May 28, 1986, after Ms. Hernandez had been receiving payments under annuity policy number 2433 for about six months, Carolyn Greely, Vice President and Underwriter of Mid America, sent Ms. Hernandez a letter stating that policy number 2710 was being exchanged for policy number 2433. The letter states, “These changes in no way affect the guarantee or benefits to you, as outlined in your policy. This exchange is for our reserving purposes only.” However, policy number 2710 differs from Ms. Hernandez’ original policy, because at the bottom of the policy schedule page it states, “THIS IS A REGISTERED POLICY, CERTIFICATE NUMBER 103.” Attached to policy number 2710 was a certificate of deposit from the Commissioner of Insurance containing the language from La. R.S. 22:1029(B) and bearing certificate number 103.
Frederick Chiquet, the Secretary and Treasurer of Mid America, testified in his deposition that the reason for the exchange of policies was that there was a miscalculation in the way policy number 2433 had been | ¿valued in Mid America’s financial statements. Although this miscalculation did not affect the actual value of Ms. Hernandez’ annuity, it affected the amount of funds Mid America was required by law to keep on reserve. Therefore, Mid America wanted to reissue the policy under a new number so that it could reduce the amount of reserves it was required to keep.
On July 25, 1986, Carolyn Greely sent Ms. Hernandez another letter, explaining that a mistake had been made when Mid America exchanged policy number 2710 for policy number 2433. The letter states that policy number 2710 had included an incorrect policy schedule page and that the certificate of deposit should not have been attached to policy number 2710. The letter specifically notes that Ms. Hernandez’ policy is a structured annuity and not a certificated policy. Along with the letter, Carolyn Greely enclosed the correct policy schedule page which, like the policy schedule page of the original policy Ms. Hernandez had been issued, does not state anywhere that it is a registered policy, but simply states that it is a “Single Premium Immediate Annuity.” The letter asks Ms. Hernandez to replace the incorrect schedule page with the correct one and to return certificate of deposit number 103 to Mid America’s office for cancellation.
On September 29, 1986, Ms. Hernandez signed an exchange of policy receipt, acknowledging that she had received the new policy in exchange for the old one and that she understood “the exchange is for reserving purposes only and in no way affects the guarantee or benefits made to me under Policy Number 2433.” On that same date, Ms. Hernandez executed a lost policy form in which she stated that certificate of deposit number 103 had been lost, misplaced, or inadvertently destroyed and was no longer in her possession. Therefore, the certificate could not be returned to Mid America, 1 (¡and the lost policy form states that it is to be accepted in lieu of the return of the certificate of deposit.
The trial court found that, although sloppy record keeping was involved, there was no evidence Ms. Hernandez was ever purposefully issued a registered annuity. The trial court found that the original policy she was issued, policy number 2433, was not registered and that the second policy was registered in error, which was then corrected. When Ms. Hernandez was issued the second policy in exchange for policy number 2433, the exchange was to have no effect on her benefits under the original policy, as noted in the letter which accompanied the new policy. In contradiction to what the letter stated, the new *50 policy, policy number 2710, mistakenly stated that it was registered, and it had a certificate of deposit attached to it. At the time she received that policy, however, Ms. Hernandez did not sign the exchange of policy receipt, acknowledging receipt of the new policy in exchange for the old one. In fact, she did not sign the exchange of policy receipt until September 29, 1986, long after Mid America had sent her a letter correcting its mistake, explaining that her policy was not a certificated annuity, and enclosing the correct policy schedule page for policy number 2710. The exchange of policy receipt acknowledges that the exchange is for reserving purposes only and that it in no way affects her benefits under policy number 2433. Furthermore, Ms. Hernandez signed a lost policy form for certificate of deposit number 103, which states in part “[A]ccept this in lieu of the return of Certificate of Deposit # 103.”
17Accordingly, we conclude a reasonable factual basis exists for the finding of the trial court that Ms. Hernandez purchased an unregistered annuity from Mid America.[3]
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court finding that the succession representative of the plaintiff, Sharon Gay Hernandez, has no cause of action against the State and dismissing her claims against the State with prejudice. All costs of this appeal are assessed to plaintiff.
AFFIRMED.

. The objection of no cause of action was not pled as a peremptory exception but as a defense in the answer. The finding of no cause of action was based on the evidence establishing or failing to establish proof of certification of an annuity, as hereinafter discussed.

. Having determined that La. R.S. 22:1029 did not apply to this annuity, and therefore there was no cause of action against the State, the trial court did not reach the more difficult question of whether there would have been a cause of action if the policy had been registered. We, likewise, express no opinion on this issue.